# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| REGINALD C. HOWARD,           )<br>                                           )<br>               Plaintiff,            )<br>                                           )<br>        vs.                              )<br>                                           )<br>GARY HILL, et al.,              )<br>                                           )<br>               Defendants.       )<br>_____) | 3:03-CV-00493-HDM (RAM)<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Howard D. McKibben, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Plaintiff's Motion for Summary Judgment filed on January 12, 2006 (Doc. #27). Defendants opposed the motion (Doc. #30). Plaintiff did not reply.

## BACKGROUND

Plaintiff filed this civil rights suit in federal court against Defendants Gary Hill and Michael Goble on September 24, 2003. (Doc. #4.) Defendants filed a motion to dismiss the Complaint for failing to completely exhaust his administrative remedies. (Doc. #6.) The court found the Complaint was mixed, containing both exhausted and unexhausted claims, and subsequently ordered Plaintiff to voluntarily dismiss his unexhausted claims or have his entire suit dismissed without prejudice. (Doc. #11.) Since Plaintiff took no action, the court dismissed the entire suit. (Docs. #13, 14.) Plaintiff appealed the court's dismissal to the United States Court of Appeals for the Ninth Circuit. (Doc. #12.) On December 15, 2005, the Ninth Circuit reversed and held that Plaintiff satisfied the Prison Litigation

Reform Act exhaustion requirement because no relief was available to Plaintiff through the inmate grievance procedure. (Doc. #23.)

## STATEMENT OF FACTS

All of the following events allegedly occurred while Plaintiff resided at Nevada State Prison (hereinafter "NSP") in Carson City, Nevada. (Docs. #4, 31.)

A. June 30, 1999

On June 30, 1999, Plaintiff and several other inmates were walking single file on the "red-line" leaving the prison dining hall. (Docs. #4; 31; Doc. #27, Exhs. A6, A7.) Another group of inmates was following the same red-line in the opposite direction to the dining hall from the housing unit. (Doc. #27, Exh. A6.) When the two groups' paths met, Plaintiff's group stepped off the red-line to let the others pass. (Doc. #27, Exh. A5.) Then, Correctional Officer Hinson allegedly approached Plaintiff's group of inmates and told them that another officer, Defendant Hill, wanted to see them at his post at the gun tower. (Doc. #27, Exhs. A5, A6.) When the inmates reported to Defendant Hill's post, Defendant Hill had the inmates sit on rocks outside his post. (Doc. #27, Exhs. A4-A6, A8.)

According to Plaintiff, Defendant Hill had the inmates sitting on the hot rocks for approximately thirty minutes before he issued individual verbal warnings to the inmates about stepping off the red-line. (Doc. #27, Exhs. A4, A5.) Then, Defendant Hill allegedly asked each inmate, "is your ass hot yet?" (*Id.*) The first inmate answered in the affirmative and he was allowed leave. (Doc. #27, Exhs. A4-A6.) Plaintiff, however, claims he responded with, "is that a direct order?" (Doc. #27, Exhs. A4, A5.) Plaintiff claims that Defendant Hill then got upset and forced Plaintiff to lay face down on the hot asphalt ground. (*Id.*) Plaintiff claims that he told Defendant Hill the asphalt was burning his face, but Defendant Hill told Plaintiff not to move or else he would shoot him. (*Id.*) Plaintiff claims he lied with his face on the ground out of fear for several minutes until Officer Hinson escorted Plaintiff to the lock down unit. (*Id.*)

According to Defendant Hill, the inmates sat on the rocks near his post for no more than fifteen minutes before he gave each inmate an individual verbal warning.[1] (Doc. #27, Exh. A6.) When Defendant Hill got to Plaintiff, Defendant Hill claims that Plaintiff acted in "a bizarre manner." (*Id.*) Plaintiff allegedly turned away from Defendant Hill and started to walk towards another inmate. (*Id.*) At that point, Defendant Hill admits he ordered Plaintiff onto the ground and handcuffed him. (*Id.*) Defendant also admits he had his gun at port arms, but claims there was no ammunition in the chamber. (Doc. #27, Exhs. A1, A6; Doc. #30, Exh. 1.)

B.  December 21, 1999

Plaintiff had another encounter with Defendant Hill on December 21, 1999. On that particular day, it appears that several inmates were escorted outside and ordered to sit on the ground (*e.g.*, Doc. #27, Exhs. B3-B5), because there had been a stabbing incident inside Plaintiff's prison wing (Doc. #4; Doc. #30, Exh. 1).

Plaintiff alleges that as he was escorted out of his prison unit in handcuffs by Defendant Hill, Defendant Hill shoved him, which caused Plaintiff to fall on the ground. (Doc. #27, Exhs. B2, B3.) Defendant Hill allegedly told Plaintiff that he did not care that Plaintiff had sued him before or whether Plaintiff sued him again.[2] (*See id.*) Plaintiff then claims that Defendant Hill allegedly forced his knee into Plaintiff's back and tugged at Plaintiff's handcuffs to the point where Plaintiff's wrists bled. (Doc. #27, Exh. B2-B4.) According to Plaintiff, Defendant Goble was present during these events and volunteered to corroborate whatever future disciplinary write-ups that Defendant Hill would make against Plaintiff. (Doc. #27, Exh. B2; *see* Doc. #27, Exh. B3.)

According to Defendant Hill, however, Defendant Hill was seating Plaintiff on the ground with other inmates when Plaintiff quickly turned himself around. (Doc. #27, Exh. A2; Doc. #30, Exh. 1.) Defendant Hill claims Plaintiff's actions caused him to lose grip of Plaintiff's arm. (Doc. #27, Exh. A2;

---

[1] Defendant Hill does not remember asking the inmates whether their bottoms were hot. (Doc. #27, Exh. A6)

[2] Plaintiff filed case number 3:99-cv-00367-HDM (VPC) on July 6, 1999, against Defendant Hill.

3

Doc. #30, Exh. 1.) Defendant Hill then brought Plaintiff to his knees and placed him face down on the ground in order to regain control and prevent Plaintiff from getting away. (Doc. #27, Exh. A2; Doc. #30, Exh. 1.) After that, Defendant Hill admits there was no more resistance from Plaintiff. (Doc. #27, Exh. A2; Doc. #30, Exh. 1.)

## **LEGAL STANDARD**

A party may move for summary judgment under Federal Rule of Civil Procedure (hereinafter "FRCP") 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The facts are viewed in the light most favorable to the non-moving party. *Hunt v. Dental Dept.*, 865 F.2d 198, 200 (9th Cir. 1989). Material facts are those which would affect the outcome of the case under the substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Whether there is no genuine issue on a material fact means that a rational fact-finder must not be able to find in favor of the nonmovant. *Id.*; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The court does not weigh the evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994).

In matters in which the moving party bears the burden of proof at trial, the moving party must "establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). This must be shown through affidavits or some other form of admissible evidence. *Id.* Conversely, where the moving party does not bear the burden of proof at trial, he only has to show the court that there is no genuine issue of material fact, *Celotex Corp.*, 477 U.S. at 323, on at least one of the essential elements of the other party's claim, *Fontenot*, 780 F.2d at 1195. This may be accomplished by either producing affirmative evidence to negate a material fact in the opposition's case, or by pointing out the absence of a genuine issue on a material fact in the opposition's case. *Celotex Corp.*, 477 U.S. at 325. In either instance, if the moving party meets his initial burden of production, the nonmovant who bears the ultimate burden

4

at trial "must set forth specific facts showing that there is a genuine issue for trial[,]" Fed. R. Civ. P. 56(e), and may not rely on mere allegations. *Anderson*, 477 U.S. at 248.

## DISCUSSION

To begin, since the Complaint is not a model of clarity, the court will identify Plaintiff's claims in light of Plaintiff's motion for summary judgment. In doing so, the court will give the Complaint and Plaintiff's motion for summary judgment a liberal construction. *Frost v. Symington*, 197 F.3d 348, 352 (9th Cir. 1999).

First, Plaintiff claims that Defendant Hill used excessive force in violation of the Eighth Amendment on June 30, 1999. He also claims this conduct constituted an assault under Nevada Revised Statute (hereinafter "NRS") § 200.471. Third, Plaintiff alleges that Defendant Hill used excessive force upon Plaintiff on December 21, 1999, which fourth, also constituted an assault under state law. Fifth, Plaintiff claims that day's attack from Defendant Hill was done in retaliation for a civil rights lawsuit that Plaintiff had previously filed in federal court. Sixth, Plaintiff alleges that Defendant Goble failed to take reasonable steps to protect Plaintiff from Defendant Hill's use of excessive force.

A.   Eighth Amendment Excessive Force, Claims 1 & 3

Plaintiff alleges two instances of excessive force by Defendant Hill under the Eighth Amendment. The first claim arises from events that occurred on June 30, 1999. (Doc. #4.) The second claim is against Defendant Hill for events which occurred on December 21, 1999. (*Id.*) However, before the court reaches the merits of Plaintiff's motion for summary judgment on those claims, the court shall address a question that Defendant Hill raises over a particular piece of evidence attached to Plaintiff's motion.

Defendant Hill objects to the use of a letter purportedly written by Officer Hinson (Doc. #27, Exh. A3) in Plaintiff's motion for summary judgment because the letter is inadmissible. The court agrees with Defendant. "A trial court can only consider admissible evidence in ruling on a motion for summary judgment. Authentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what the proponent

5

claims.'" *Orr v. Bank of American, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (quoting Fed. R. Evid. 901(a)).

Here, the letter allegedly written by Officer Hinson was addressed to Defendant Hill's former counsel, Mr. Daniel Wong. The letter recounts the events that Officer Hinson purportedly witnessed on June 30, 1999, and in its closing, contains the purported signature of Officer Hinson. However, there is no accompanying affidavit from Officer Hinson that states that he authored the letter. Fed. R. Evid. 901(b)(1). There is no other proper kind of foundation for the letter. *E.g., id.*; *see, e.g., Orr v. Bank of America*, 285 F.3d at 777-78 (discussing a memo and letter not property authenticated). This failure to comply with a basic prerequisite of admissibility precludes the court from considering the letter at this time.

As to the merits of Plaintiff's motion, the key inquiry in a claim for excessive force is whether "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992). Relevant factors include the "need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). The extent of injury suffered by the prisoner should also be considered, but a lack of serious injuries is not determinative.[3] *Id.*

In this case, it is undisputed that Plaintiff's interaction with Defendant Hill on June 30, 1999, began because Plaintiff stepped off the red-line and got out of single-file order. (Doc. #27, Exhs. A6, A7.) It is also undisputed that Plaintiff ended up on lying on the ground pursuant to Defendant Hill's orders. (Doc. #4; Doc. #27, Exhs. A4-A6.) However, the court finds that what transpired in between those times is the subject of a factual debate. That is, it is not clear why Defendant Hill ordered Plaintiff

---

[3] Plaintiff incorrectly states that under the Eighth Amendment, "every malevolent touch by a prison guard gives rise to a federal cause of action." (Doc. #27.) To the contrary, not every malevolent touch will necessarily give rise to a federal claim. *Hudson*, 503 U.S. at 9 (citing *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

6

to lay on the ground. *Parker v. Asher*, 701 F. Supp. 192, 194 (D. Nev. 1988) (stating that the key inquiry under the Eighth Amendment is "the reason for the infliction of [the] injury").

In fact, it is wholly contested between the parties whether Defendant Hill acted maliciously towards Plaintiff or whether Defendant Hill was merely attempting to maintain internal order and discipline. *Hudson*, 503 U.S. at 6-7. From Plaintiff's account of events, Defendant Hill forced Plaintiff to sit on rocks in the sun and then onto the ground with the threat of a loaded shotgun for no apparent reason other than to cause Plaintiff pain. (Doc. #4; Doc. #27, Exhs. A4, A5.) Yet Defendant Hill claims that he ordered Plaintiff to sit in order warn him against falling out of the prison's single-file line procedure. (Doc. #27, Exh. A6; Doc. #30, Exh. 1.) Defendant Hill also maintains that Plaintiff was ordered to the ground for safety reasons because Plaintiff ignored his previous questions, turned his back on Defendant Hill, and then started walking towards another inmate[4] (*id.*) *See Parker v. Asher*, 701 F. Supp. at 195 (recognizing that prison officials must often threaten inmates to enforce security and discipline).

The same thing is true for the December 21, 1999, incident between Plaintiff and Defendant Hill. It is undisputed that Plaintiff was being escorted out of his prison wing that day for security purposes because there had been some sort of a fight amongst a group of inmates. (Doc. #30, Exh. 1.) It is also undisputed that Plaintiff again ended up on the ground. (Doc. #27, Exhs. B2-B4; Doc. #30, Exh. 1.) However, according to Plaintiff, Defendant Hill shoved Plaintiff to the ground and dug his knee into Plaintiff's back without any legitimate penological purpose while Defendant Goble sat idly by. (Doc. #27, Exhs. B2, B3.) According to Defendant Hill, Plaintiff ended up on the ground because he slipped away from Defendant Hill's grasp during an escorted evacuation after a serious institutional security breach (Doc. #30, Exh. 1). *See Hudson*, 503 U.S. at 6 (stating that courts should

---

[4] At this point, the court notes that even if Officer Hinson's letter were considered, it would not be helpful here. Officer Hinson left the vicinity of Defendant Hill's post after the inmates were ordered to sit down and returned when Plaintiff was already on the ground. (Doc. #27, Exh. A3.) The letter by Officer Hinson does not show that he has any personal knowledge as to why Plaintiff was ordered to the ground.

give "wide-ranging deference" to the judgment and actions of prison officials in the maintenance of order, discipline, and institutional security).

Given these important factual disputes, Plaintiff's motion for summary judgment should be denied. Both sides offer different versions of what occurred on June 30, 1999, and December 21, 1999. In fact, the conflicting reasons for Defendant Hill's treatment of Plaintiff on each occasion is apparent from the evidence attached to Plaintiff's motion for summary judgment. Plaintiff's own evidence shows that there are genuine issues of material fact as to whether force was applied in a good-faith effort to maintain order, or whether force was applied maliciously to cause harm. Since reasonable minds could differ on the material facts, a jury should have the opportunity to evaluate the witnesses and make a determination based on the information gained therefrom.

C. First Amendment Retaliation, Claim 5

Plaintiff claims that Defendant Hill retaliated against him on December 21, 1999, for initiating a civil action regarding the events of June 30, 1999. (Doc. #4.) To prevail on this claim, Plaintiff must show that: (1) Defendant Hill retaliated against Plaintiff for Plaintiff's exercise of his constitutional rights and (2) that the retaliatory action did not advance a legitimate penological interest. *Hines v. Gomez*, 108 F.3d 265, 267 (9th Cir. 1997); *Barnett v. Centoni*, 31 F.3d 813, 815-16 (9th Cir. 1994).

Plaintiff's motion for summary judgment should be denied because the reason behind the December 21, 1999, altercation between Plaintiff and Defendant Hill is in total dispute. *See Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (stating that the plaintiff inmate bears the burden of showing the absence of a legitimate correctional goal). That is, Plaintiff contends that Defendant Hill threw him to the ground on December 21, 1999, because Plaintiff had initiated a civil suit against Defendant Hill. (Doc. #27, Exh. B2; *see* Doc. #27, Exhs. B3-B5.) Yet Defendant Hill maintains that he got Plaintiff on the ground because Plaintiff slipped away from his grasp during a security escort. (Doc. #27, Exh. A2.) *See Witherow v. Paff*, 52 F.3d 264, 266 (9th Cir. 1995) (stating that security and order are legitimate penological interests). In fact, according to Defendant Hill, he did not even know Plaintiff's identity until moments after the incident occurred. (Doc. #27, Exh. A2; Doc. #30, Exh. 1.)

8

Plaintiff's attempt to eliminate these genuine disputes of material fact with several affidavits from fellow inmates (Doc. #27, Exhs. B3-B5) is unavailing. On motion for summary judgment, the court's duty is to determine whether there are factual issues that must go to trial. *United States v. One Tintoretto Painting Entitled the "The Holy Family with Saint Catherine & Honored Donor,"* 691 F.2d 603, 606 (2d Cir. 1982). The court does "not . . . weigh the evidence or determine the truth of the matter . . . ." *Lyons v. England*, 307 F.3d 1092, 1117 (9th Cir. 2002). Those matters are decided by the fact finder. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). As such, because it is unclear whether Defendant Hill was acting pursuant to some legitimate penological purpose on December 21, 1999, summary judgment should not be granted on Plaintiff's claim for retaliation.

D. <u>NRS § 200.471 Assault, Claims 2 & 4</u>

Plaintiff also claims that Defendant Hill assaulted him in violation of state law on June 30, 1999, and December 21, 1999. (Doc. #4.) An assault under NRS § 200.471 means "intentionally placing another person in reasonable apprehension of immediate bodily harm." Nev. Rev. Stat. § 200.471 (West. 2006). "Mere menace is not enough. There must be an effort to carry the intention into execution." *Wilderson v. State,* 482 P.2d 314, 316 (Nev. 1971); *accord In re Bradshaw*, 315 B.R. 875, 887 (Bankr. D. Nev. 2004).

Plaintiff should not be granted summary judgment on his second and fourth claims for assault. Affidavits from both sides show there is a genuine dispute as to whether Defendant Hill, on both occasions, acted with more than mere menace. For example, there is a factual debate whether Plaintiff could have been in reasonable apprehension of being shot by Defendant Hill because it is not clear if Defendant Hill ever pointed a loaded gun at him on June 31, 1999 (*compare* Doc. #27, Exhs. A1, A6, A8 *with* Doc. #27, Exhs. A4, A5). *See In re Bradshaw*, 315 B.R at 887 (concluding that verbal threats did not amount to an assault where there was insufficient evidence of an intent to cause another physical harm). It is also debated whether Defendant Hill forced his knees into Plaintiff's back or pulled at his handcuffed wrists on December 21, 1999. (*Compare* Doc. #27, Exh. A2 *with* Doc. #27, Exh. B2.) Defendant Hill maintains that on that date, he only attempted to get Plaintiff seated on the

ground in front of the north fence line and he did not make any threatening remarks to Plaintiff. (Doc #30, Exh. 1.)

Because both parties offer different versions of June 31, 1999, and December 21, 1999, it is unclear whether Plaintiff could had a reasonable apprehension of harm in either instance. Summary judgment should therefore be denied on Plaintiff's claims against Defendant Hill for assault.

E.  Failure to Protect, Claim 6

Plaintiff's final claim, which is directed at Defendant Goble, also fails to meet the summary judgment standard. Plaintiff alleges that Defendant Goble is liable under the Eighth Amendment[5] for witnessing but failing to protect him from the harm inflicted by Defendant Hill on December 21, 1999. (Doc. #4; *see* Doc. #27, Exhs. B2.) However, it is unclear whether Defendant Hill actually used excessive force on Plaintiff during the prison evacuation in the first place. (*See supra*, Part A.) In addition, although Plaintiff claims that Defendant Goble witnessed the entire incident with Defendant Hill (Doc. #4; *see* Doc. #27, Exh. B2),[6] Defendant Goble swears that "never witnessed [Defendant] Hill assault any inmate at any time." (Doc. #30, Exh. 2.)

At this stage, whether Defendant Goble was present and witnessed any incident between Defendant Hill and Plaintiff on December 21, 1999, is a genuine issue of material fact. Plaintiff's motion for summary judgment against Defendant Goble should therefore be denied.

///
///
///

---

[5] Plaintiff's motion for summary judgment argues that Defendant Goble is liable under the Fourth Amendment. (Doc. #27.) There is, however, no legal claim for a failure to protect under the Fourth Amendment. *See Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) ("[A] prison official can violate a prisoner's Eighth Amendment rights by failing to intervene").

[6] The court notes that no other inmate whose affidavit was attached to Plaintiff's motion states that Defendant Goble was in fact present at the alleged moment. (*See* Doc. #27, Exhs. B3-B5.)

10

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the District Judge enter an order **DENYING** Plaintiff's Motion for Summary Judgment (Doc. #27).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: August 10, 2006.

_____
UNITED STATES MAGISTRATE JUDGE