UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | | |
|---|---|---|
| REGINALD C. HOWARD, | ) | 3:03-CV-0493-HDM (RAM) |
| Plaintiff, | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| GARY HILL, et al., | ) | |
| Defendants. | ) | |

This Report and Recommendation is made to the Honorable Howard D. McKibben, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4.

Before the court is Defendants' Motion for Summary Judgment (Doc. #43). Plaintiff opposed the motion (Doc. #48-1) and Defendant replied (Doc. #52).

## BACKGROUND

Plaintiff is currently an inmate at High Desert State Prison in Indian Springs, Nevada. (Doc. #43).

In Count I, Plaintiff alleges that Defendant Gary Hill, a correctional officer, violated his First, Eighth and Fourteenth Amendment rights and assaulted him on June 30, 1999. (Doc. #4). The parties agree that the events giving rise to Plaintiff's claims in Count I took place on June 30, 1999 between 4:30 and 5:00. (Doc. #43; Doc. #48). Plaintiff alleges that on that date he and some other inmates were returning from the "chow hall", and that Plaintiff was walking the red line back to his unit. (Doc #4). Defendant contends that Plaintiff and the other inmates with whom he was walking were not walking on the red line, as is required by prison procedure, but were walking

1  abreast. (Doc. #43). Plaintiff alleges that he and other inmates were not violating prison procedures
2  and had to step off the red line because another group of inmates was coming down the red line
3  from the opposite direction. (Doc. #4). It is undisputed that Defendant Hill was assigned to
4  "Gunpost 3" that day and that after Plaintiff and the other inmates walked past this post, Defendant
5  Hill radioed to staff requesting that Plaintiff and the other inmates be sent back to Gunpost 3. (Doc.
6  #43; Doc. #4). Gunpost 3 overlooks the path upon which the red the red line is painted. (Id.) The
7  parties accounts differ regarding what happened next, when Plaintiff and the other inmates returned
8  to Gunpost 3, as ordered. Plaintiff's version alleges, and is supported by Plaintiff's sworn affidavit,
9  that upon returning to that point Defendant ordered Plaintiff and the other inmates to sit on some
10 hot rocks "till our ass got hot". (Doc. #48). Plaintiff alleges that he experienced pain from sitting
11 on these rocks. (Doc. #4). He also alleges that after they had been sitting on the rocks for awhile,
12 Defendant Hill asked another inmate, Mr. Thomas, whether his "ass" was "hot yet?" (Id.) Plaintiff
13 alleges that Mr. Thomas responded affirmatively and then was permitted to leave. (Id.) Plaintiff
14 alleges that Defendant then asked Plaintiff the very same question, but that Plaintiff responded by
15 asking if the question was "a direct order?" (Id.) Plaintiff alleges that Defendant Hill then grabbed
16 his shotgun and told Plaintiff to get off the rocks and come close to the gun tower. (Id.) Plaintiff
17 alleges that once he followed this order Defendant Hill again asked him "is your ass hot yet?" (Id.)
18 Plaintiff allegedly responded by saying "if you are giving me a direct order I'll tell you, but I don't
19 believe I that I should have to tell you if my ass is hot or not." (Id.) Plaintiff maintains that he said
20 this because Defendant's question had sexual overtones and was unclear. (Id.) According to
21 Plaintiff's account of the events this apparently enraged Defendant Hill who then allegedly
22 chambered a round of ammunition into his shotgun and pointed it at plaintiff, saying "yes, it's a
23 damn direct order, now get your ass face-down on the f_ _ _ing ground and spread your f_ _ _ing
24 hands and arms." (Doc #4) (alteration of expletive in the original). Plaintiff alleges that he complied
25 with this order and complained that the hot asphalt road was burning his face. (Id.) Defendant
26 allegedly responded by saying "I don't give a damn about your face being hot and if you raise it up
27 off the ground I'll shoot your ass." (Id.) Plaintiff alleges that he was afraid of being shot and so
28

2

1  remained lying on the asphalt for several minutes until other correctional officer's arrived and
2  escorted him to the lock down unit. (Id.)

3      Plaintiff also contends that the above events give rise to a claim for assault with a deadly
4  weapon under Nevada Revised Statutes 200.471. NEV. REV. STAT. § 200.471 (2006).

5      Defendant Hill's version differs slightly from the account set forth above. Most significantly,
6  Defendant Hill denies that he chambered a shotgun shell into the shotgun or pointed the shotgun
7  at Plaintiff. (Doc. #43). Defendant Hill also maintains that the reason he ordered the inmates back
8  to his post was to "verbally warn" them for violating a security procedure. (Id.) Defendant Hill
9  also states he did not order Plaintiff to the ground until after Plaintiff allegedly began walking
10 towards another inmate. (Id.; Doc. #27, Exh. A6). Defendant Hill expressly denies chambering a
11 shotgun shell in his shotgun. (Doc. #30). Defendant Hill offers nothing else to contradict Plaintiff's
12 account besides a general statement that he "took the reasonably necessary actions that [he] believed
13 necessary to require Inmate Howard to comply with prison regulations and to prevent a potentially
14 dangerous situation." (Doc. #30-1, Defendant Hill's affidavit).

15     Plaintiff informs the court that he filed a civil rights action against Defendant Hill in
16 response to the incidents recounted above and that he was also subsequently subjected to some
17 discipline based on the June 30, 1999 events. (Doc. #4).

18     In Count II, Plaintiff alleges that Defendants Hill and Goble violated his First, Eighth, and
19 Fourteenth amendment rights and that the Defendants assaulted him. The events making up the
20 allegations in Count II allegedly occurred between June 30, 1999, when Plaintiff was placed in a
21 "lock-down" unit after the alleged incident described above, and December 21, 1999, when
22 Plaintiff's second alleged encounter with Defendant Hill occurred. (Doc. #4). Plaintiff alleges that
23 on December 21, 1999 Defendant Hill was again on duty at Gunpost 3. (Id.) Plaintiff alleges that
24 after an incident between Mexican gang member inmates Plaintiff was strip searched, handcuffed,
25 and taken out of his cell and made to sit on the roadway while his cell was searched. (Id.) Plaintiff
26 alleges that while he was seated on the roadway, Defendant Hill came down from Gunpost 3 and
27 grabbed Plaintiff by the arm and began shouting "Do you think I care about a damn lawsuit? Been
28

there, done that. If you know me, you should know that I don't give a damn about no lawsuit." (Id.) Plaintiff alleges that he feared Defendant because of certain knowledge he had regarding Defendant's conduct towards other inmates (Plaintiff states he believed Defendant had previously broken another inmate's arm and jumped on another inmate's back). (Id.) Plaintiff alleges that Defendant next made Plaintiff get up and escorted him over to a fence and ordered him to sit on the asphalt roadway and face the fence. (Id.) Plaintiff relates that he had difficulty complying because he was handcuffed at the time. (Id.) Plaintiff alleges that as he was attempting to take a seated position Defendant shoved him and caused him to fall onto the roadway. (Id.). Plaintiff further alleges that while he was on the roadway Defendant stood over Plaintiff and shouted "this is the guy who is suing me, you don't want to be like him." (Id.) The Defendant then allegedly repeated "I don't give a damn about no lawsuit ... been there, done that." (Id.)

Plaintiff alleged that Defendant then left him face down in the road. (Id.) Defendant then allegedly escorted another inmate over to the area where Plaintiff was laying and allegedly asked Plaintiff "are you ready to talk now?" (Id.) Plaintiff alleges that he did not respond because he did not know what Defendant wanted to discuss. (Id.) Plaintiff next alleges that Defendant again repeated some comments regarding Plaintiff's lawsuit against him and then placed his knee in Plaintiff's back with the full force of his body, which Plaintiff alleges caused Plaintiff agonizing pain. (Id.) Plaintiff alleges that Defendant pushed his knee in to Plaintiff's back as to tighten Plaintiff's handcuffs. (Id.) Defendant allegedly did this so forcefully that Plaintiff's wrists became lacerated and bloody from the pressure. (Id.) Plaintiff alleges that he screamed out in pain, to which the Defendant allegedly responded, "now you got artery problems." (Id.)

Plaintiff alleges that Defendant then stood over him and said "Oh, I didn't know that you were the guy suing me, but just wait until you see your write-ups." (Id.) Plaintiff also alleges that after Defendant Hill said this Defendant Goble, who was then assigned to the gunrail, asked Defendant Hill, "Do you need a witness to back you up on that?" (Id.) Plaintiff alleges that Defendant responded, "yeah, but you didn't see nothing but him trying to resist."

4

Plaintiff was then taken to the infirmary where his wrists were treated. (Id.) Plaintiff claims that the medical staff at the infirmary told him that the injuries "'should' be fine in approximately six months" and gave him some Motrin 800. (Id.) In his deposition Plaintiff alleges that full feeling did not return to his thumb for six months, but that he now has feeling in his thumb. (Doc. #27, Exh. A-7 at pp. 71-2).

Defendant Hill's version of the events of December 21, 1999 differs significantly from Plaintiff's account. According to Defendant Hill's story, after Plaintiff was searched he was escorted to an open area where Defendant Hill took custody of the Plaintiff and led Plaintiff to a fence where other inmates were kneeling, facing the fence. (Doc. #43). Defendant Hill maintains that as he tried to place Plaintiff on his knees Plaintiff turned away from Defendant, causing Defendant to lose his grip on Plaintiff. (Id.) Defendant Hill admits that he then used force to put Plaintiff on his knees as to prevent his escape, and that he then caused Plaintiff to lie face down on the ground. (Id.)

As above, Plaintiff contends that the events of December 21, 1999 described above also give rise to a claim for assault, Nevada Revised Statutes 200.471. NEV. REV. STAT. § 200.471.

## DISCUSSION

*A.* **Standard for Summary Judgment**

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment where, viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party. FED.R.CIV.P. 50(a). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not

appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), cert. denied, 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED.R.CIV.P. 56(c); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

The court must defer to State prison officials regarding day-to-day prison operations. *Turner v. Safley*, 482 U.S. 78, 84-85 (1986)(holding that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform ..." and additional deference to prison authorities is due where state penal system is involved). In order to defeat summary

judgment the plaintiff must demonstrate the regulations at issue are not reasonably related to legitimate penological interests. *Bahrampour v. Lampert*, 356 F.3d 969, 973 (9th Cir. 2004).

**B.     Plaintiff's claims under Nevada Revised Statutes section 200.471**

Plaintiff claims that Defendant Hill violated his rights under Nevada Revised Statute section 200.471, a criminal assault statute. NEV. REV. STAT. § 200.471. Criminal statutes are not generally enforceable by a civil action. *Collins v. Palczewski*, 841 F.Supp. 333, 340 (D. Nev. 1993); *United States v. Jourden*, 193 F. 986 (9th Cir. 1912). In *Collins* the court explained its rationale for denying the inmate plaintiff a private right of action based on a criminal statute, NEV. REV. STAT. 197.200:

> Only in very limited circumstances have courts found private actions maintainable under criminal statutes. Without exception, the plaintiffs have been members of the public that the statutes were specifically designed to protect. [citations omitted]
> ...
> Furthermore, only proper prosecuting authorities may enforce violations of criminal statutes, no private parties. [citation omitted]. Indeed, N.R.S. § 169.055, which defines "criminal action," states that "[a] criminal action is prosecuted in the name of the State of Nevada, as plaintiff."

*Collins*, 841 F. Supp at 340. Further, a criminal prosecution is within the sole jurisdiction of the district attorney. See *Cairns v. Sheriff, Clark County*, 89 Nev. 113, 115, 508 P.2d 1015, 1016 (1973).

Here, Plaintiff's complaint asks for relief based on a Nevada state criminal statute. The court is not aware of any authority permitting Plaintiff to bring a civil action based on this statute. Plaintiff's claims under this section cannot be maintained because he is a private party attempting to enforce a purely criminal statute.

Defendants' motion for summary judgment on Plaintiff's claims under Nev. Rev. Stat. 200.471 in Count I and Count II should be **GRANTED.**

///
///
///
///

7

**C.     Plaintiff's Eighth Amendment claims**

The Eighth Amendment bans the infliction of cruel and unusual punishment on convicted persons. U.S. CONST. Amend. VIII; *Wilson v. Seizer*, 501 U.S. 294, 296-97 (1991). States must abide by this ban under the Due Process clause of the Fourteenth Amendment. *Robinson v. California*, 370 U.S. 660, 666 (1962).

In cases dealing with prison security, the plaintiff must show that the prison guard acted with malicious and sadistic intent. *Whitley v. Albert*, 475 U.S. 312, 320-21 (1986)(where inmate plaintiff was shot by guard attempting to quell a prison riot). In *Hudson v. Macmillan* the Supreme Court held that this standard applies equally to cases involving the use of force by prison guards outside the riot context. *Hudson v. Macmillan*, 503 U.S. 1 (1992) (where, after an argument with the Plaintiff inmate, a prison guard kicked and punched the inmate while escorting him to a lockdown area). In determining whether a prison official has used excessive force in violation of an inmates's constitutional rights, the core inquiry is whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 320-21. In making that determination, the court may evaluate factors such as (1) the need for application of force, (2) the relationship between that need and the amount of force used, (3) the threat reasonably perceived by the responsible officials, (4) any efforts made to temper the severity of a forceful response, and (5) the extent of any injuries to the inmate. *Whitley*, 475 U.S. at 321.

Although the extent of injuries is relevant, the plaintiff need not prove a significant injury. *Hudson*, 503 U.S. at 9. Thus, absence of serious injury does not end the inquiry. *Id.*; *see also Meredith v. Arizona,*523 F.2d 481 *(*no lasting injury needed where guard hit inmate in solar plexus during an emphysema attack, but inmate fully recovered after four hours on oxygen). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimus* uses of physical force, provided the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson*, 503 U.S. at 9-10. However, "it is not the degree of injury which makes out a violation of the

eighth amendment. Rather, it is the use of official force or authority that is "intentional, unjustified, brutal and offensive to human dignity." *Felix v. McCarthy*, 939 F.2d 699, 702 (9th Cir. 1991).

The analysis, however, changes where the prison guards are not faced with an exigent circumstance such as a disturbance that poses significant risks to the safety of inmates and prison staff. *Johnson v. Lewis*, 217 F.3d 726, 733-34 (2000). Where inmates do not pose a safety risk to prison staff, the public, or each other, and the circumstances do not require prison officials to make split-second, life and death decisions, then the inmate need not satisfy the higher malicious or sadistic standard and instead need only show deliberate indifference on part of the accused prison official. *Id.* at 734. The Supreme Court has stated that the deliberate indifference analysis has objective and subjective components. *Wilson*, 501 U.S. at 298, 302. The objective element concerns whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation. *Farmer v. Brennan*, 511 U.S. 825 (1994). Specifically, mere verbal harassment or abuse is not enough to state a constitutional deprivation under 42 U.S.C. § 1983. *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987)(quoting *Collins v. Cundy,* 603 F.2d 825 (10th Cir.1979)(alleged vulgar language used by guard towards inmate did not constitute an eighth amendment claim)). The subjective prong requires that an inmate demonstrate that prison officials acted with deliberate indifference to a substantial risk of harm to inmate health or safety. *Farmer*, 511 U.S. at 834 (1994); *Wilson,* 501 U.S. at 305.

**(1)  Analysis of the June 30, 1999 claim**

Plaintiff and Defendant Hill do not agree as to the material facts surrounding the incident on June 30, 1999. However, under *Oltarzewski* Plaintiff's allegation that Defendant Hill spoke to him in a vulgar matter does not establish a genuine issue of material fact. Thus, what remains is the dispute of material fact regarding whether Defendant Hill caused Plaintiff to sit on the hot rocks, chambered a shotgun shell in his shotgun, ordered Plaintiff to lay on the hot ground, and pointed the shotgun at him with deliberate indifference. A jury must

1  resolves this dispute because Plaintiff and Defendant do not agree and they present conflicting
2  evidence in their respective affidavits. The key inquiry concerns Defendant Hill's state of mind
3  at the time as well as whether Plaintiff was made excessively uncomfortable during the
4  incident. By the accounts of both parties, Defendant Hill's alleged actions were not in response
5  to any prison uprising or disturbance. Both parties depict a situation where Plaintiff refused
6  to answer a question posed by Defendant Hill, though they disagree about the substance of
7  comments made that day. If what Plaintiff alleges is true, then a reasonable jury could infer
8  that Defendant Hill knew the rocks and ground were hot and that Plaintiff was not threatening
9  anyone in such a way as to require threats with a loaded gun. Therefore, a reasonable jury
10 could find that Defendant acted with deliberate indifference to a substantial risk of harm to
11 Plaintiff's health and safety, and thus used excessive force by causing Plaintiff to sit on very
12 hot rocks, chambering a shot gun shell in his gun and pointing it at Plaintiff, and ordering
13 Plaintiff to lay face down on a hot asphalt surface.[1]

**(2)     Analysis of the December 21, 1999 claim under the *Whitley* factors**

Defendant Goble

Plaintiff's only claim against Defendant Goble alleges that he offered to lie to back up any story Defendant Hill might come up with in regards to the alleged events of December 21, 1999. Plaintiffs allegations against Defendant Goble do not make out a constitutional violation. As a matter of law, threatening to lie about such incidents does not amount to cruel and unusual punishment under the eighth amendment.

Defendants' motion for summary judgment on Plaintiff's eighth amendment claims against Defendant Goble should be **GRANTED**.

///
///
///

---

[1] Although it would not alone constitute a claim, a jury could also consider evidence of the alleged remarks and questions from Defendant Hill to Plaintiff.

10

<u>Defendant Hill</u>

Plaintiff and Defendants Hill, as above, do not agree as to most of the material facts surrounding the incident on December 21, 1999.[2] They do, however, agree that Plaintiff's wrists were treated at the infirmary later that day. Although both parties acknowledge that some sort of outbreak occurred at the prison that day, it is not clear from the facts presented to what degree the emergency situation persisted at the time the incident between Defendant Hill and Plaintiff occurred. Defendant argues for application of the standard articulated in *Hudson* and *Whitley*, under which the inquiry concerns whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. This higher standard only applies where a situation of compromised prison security exists. *Whitley*, *supra*. If prison security was not at risk and there was not a need for split second life or death decisions, then the lower deliberate indifference standard applies. *Johnson*, *supra*.

Taking Plaintiff's version of events as true, a reasonable jury could find Defendant committed an Eighth Amendment violation under either standard. According to Plaintiff, he was handcuffed and prone (and thus of very little threat to Defendant or other inmates) when Defendant Hill allegedly pressed his knee forcefully into Plaintiff's back and pulled Plaintiff's handcuffs so tight that Plaintiff's wrists bled. A reasonable jury could find that this conduct was deliberately indifferent to a substantial risk of harm to Plaintiff's health or safety. The fact that Plaintiff's injury was not permanent is in no way dispositive of this issue. A reasonable jury could also find that Defendants' alleged forcefulness in handling Plaintiff was not made in a good faith attempt to maintain or restore discipline, but rather was applied maliciously and sadistically to cause harm. Taking Plaintiff's allegations as true and applying the *Whitley*

---

[2] Defendants object to the competency of the evidence Plaintiff offered in support of this part of the claim, an affidavit from inmate Anthony Burns (Doc. #48-1, Exh. A), on grounds that the affiant's signature appear above the statutorily required language. (Doc. #52). In accord with the additional leniency afforded to prisoner litigants, the court finds that the affiant has substantively complied with the oath requirements under Nev. Rev. Stat. § 208.165.

11

factors, Defendant Hill's alleged actions violated the Eighth Amendment. Even under Defendant Hill's version of the facts, it does not appear that there was a great need for application of force given that Plaintiff was already handcuffed and prone, and thus could not cause Defendant Hill to reasonably perceive a serious threat from Plaintiff. The fact that Plaintiff's wrists bled tends to show that Defendant Hill did not temper the severity of his response to whatever slight threat he may have perceived from Plaintiff.

Defendants' motion for summary judgment on Plaintiff's Eighth Amendment claims against Defendant Hill should be **DENIED**.

### D. Plaintiff's First Amendment Claims

Inmates retain their first amendment rights, even within the expected conditions of confinement. *Hines v. Gomez*, 108 F.3d 265, 270 (9th Cir. 1997). It is well established that when prison officials retaliate against inmates for exercise of the inmate's first amendment rights, such as filing a grievance against a prison guard, the inmate has a claim cognizable under section 1983. *Barnett v. Centoni,* 31 F.3d 813, 815-16 (9th Cir. 1994), *see also Rhodes* at *567 (*accepting this proposition and citing decisions of other circuits that accord).

In order to prove a claim of First Amendment retaliation, an inmate Plaintiff must (1) assert "that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes* at 567-68. Significantly, the Ninth Circuit has found that "speech can be chilled even when not completely silenced." *Rhodes*, 408 F. 3d 559, 568 (9th Cir. 2005). An inmate litigant's allegations that his rights were chilled is enough to perfect a claim; the inmate need not demonstrate that his speech was "actually inhibited or suppressed." *Id.*; 408 F.3d at 569 (quoting *Mendocino Environmental Center v. Mendocino County,* 192 F.3d 1283, 1300 (9th Cir. 1999)( where the court explained that the proper inquiry asks whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities.")). As

the Ninth Circuit panel in *Rhodes* made clear, to hold otherwise would present the prisoner with a "Catch 22" situation. *Rhodes*, 408 F.3d 559.[3]

While Defendant is correct that a mere threat does not make out a Constitutional claim, *see Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987), a threat paired with physical force most certainly does. *See Parker v. Asher,* 701 F. Supp. 192, 195 (D. Nev. 1988)(distinguishing *Gaut,* where the Plaintiff alleged that Defendant prison guard threatened him while pointing a taser gun at him).

Here, Plaintiff's allegations of Defendant Hill's statements to him regarding the lawsuit, and physical force accompanying those statements, is supported by Plaintiff's affidavit, Doc. #48-1, Exh A, and the affidavit of inmate Barney Montoya, *id*. Not surprisingly, Defendant Hill disputes Plaintiff's and Plaintiff's affiant's account of the events of December 21, 1999. As such, material issues of fact remain. If a reasonably jury believed Plaintiff's evidence they could find Defendant guilty of violating Plaintiff's first amendment rights.

Summary judgment on Plaintiff's Count II claim of infringement on his First Amendment rights should be **DENIED.**

///

---

[3]The Ninth Circuit included in the opinion this passage from the novel:
> There was only one catch and that was Catch-22, which specified that a concern for one's own safety in the face of dangers that were real and immediate was the process of a rational mind. Orr was crazy and could be grounded. All he had to do was ask; and as soon as he did, he would no longer be crazy and would have to fly more missions. Orr would be crazy to fly more missions and sane if he didn't, but if he was sane he had to fly them. If he flew them he was crazy and didn't have to; but if he didn't want to he was sane and had to. Yossarian was moved very deeply by the absolute simplicity of this clause of Catch-22 and let out a respectful whistle.
>
> "That's some catch, that Catch-22," he observed.
>
> "It's the best there is," Doc Daneeka agreed.
>
> -- Joseph Heller, Catch-22, at 47 (6th ed. 1976)

Rhodes, 408 F.3d at 566-57.

13

### E. Plaintiff's Fourteenth Amendment Claims

#### (1) Plaintiff's due process claims relating to the alleged excessive force on June 30, 1999 and December 21, 1999.

Under the Fourteenth Amendment, a state shall not deprive a person of life, liberty or property without due process of law. U.S. CONST. Amend. XIV. Plaintiff must show that Defendants deprived him of a liberty interest in violation or his right to due process. *McRorie v. Shimoda*, 795 F.2d 780, 784 (9th Cir. 1997). A prison guard's conduct that rises to the level of brutality violates the inmate's "right to be secure in one's person," a liberty interest safeguarded in the Fourteenth Amendment by the Due Process Clause. *Id.* At 785.

As stated above, significant material issues of fact remain disputed as to the incidents on both June 30, 1999 and December 21, 1999. Thus, summary judgment is not appropriate at this time and should be **<u>DENIED</u>** as to Plaintiff's Fourteenth Amendment claims relating to the alleged excessive force.

#### (2) Plaintiff's due process claims relating to the disciplinary proceedings following the June 30, 1999 incident

Although the guarantee of procedural due process may be claimed by prisoners, prison officials need not afford prisoners with the "full panoply of rights due a defendant" in a criminal proceeding. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). When a prisoner faces disciplinary charges, prison officials must provide the prisoner with (1) a written statement at least twenty-four hours before the disciplinary hearing which includes the charges, a description of the evidence against the prisoner, and an explanation for the disciplinary action taken; (2) an opportunity to present documentary evidence and call witnesses, unless calling witnesses would interfere with institutional security; and (3) legal assistance when the charges are complex or the inmate is illiterate. *Id.* at 563-70. In addition, due process requires that there is at least "some evidence" to support a prison disciplinary decision. *Id.* At 555-56; *Barnett v. Centoni*, 31 F.3d 813, 815 (9th Cir. 1994).

If the moving party meets its initial responsibility the burden shifts to the opposing party to establish that some genuine issue of material fact remains. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of a factual dispute, the opposing party may not rely upon a denial of its pleadings, but is required to tender evidence of specific facts in the form of affidavits and/or admissible discovery material, in support of its contention that the dispute exists. FED.R.CIV.P. 56(e); *Matsushita*, 475 U.S. at 586, n. 11.

From the pleadings it appears that Plaintiff's Fourteenth Amendment claims also concern disciplinary action taken against him following the June 30, 1999 incident. *See* Doc. #48-1. However, Plaintiff supplied nothing outside the pleadings to support his claim and his Opposition (#48) does not point the court to any evidence of a genuine issue of material fact on this issue. Likewise, the affidavits Plaintiff has attached provide nothing to shed light on this issue either. Thus, it does not appear that Plaintiff has met his burden of establishing that some issue of fact remains. Defendants' motion for summary judgment should be **GRANTED** as to Plaintiff's Fourteenth Amendment claims relating tot he alleged violation of Plaintiff's rights during the disciplinary procedure following the June 30, 1999 incident.

## RECOMMENDATION

IT IS THEREFORE RECOMMENDED that the District Judge enter an order (1) **GRANTING** Defendants' Motion for Summary Judgment on Plaintiff's claims under Nev. Rev. Stat. 200.471 in Count I and Count II, (2) **GRANTING** Defendants' Motion for Summary Judgment on Plaintiff's Eighth Amendment claims against Defendant Goble, (3) **DENYING** Defendants' Motion for Summary Judgment on Plaintiff's Eighth Amendment claims against Defendant Hill, (4) **DENYING** summary judgment on Plaintiff's Count II claim of infringement on his First Amendment rights, (5) **DENYING** summary judgment on Plaintiff's Fourteenth Amendment claims relating to the alleged excessive force, and (6) **GRANTING** Defendants' Motion for Summary Judgment as to Plaintiff's Fourteenth Amendment claims relating tot

he alleged violation of Plaintiff's rights during the disciplinary procedure following the June 30, 1999 incident. (Doc. #43).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: December 15, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

16